[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION RE' ORDER PERMITTING OWNER OF CONDOMINIUM TO INTERVENEIN SUMMARY PROCESS ACTION COMMENCED BY CONDOMINIUM ASSOCIATION
On August 16, 1995, the plaintiff, The Consolidated Association of the Birches at Foxon, (Association) brought an action for ejectment as attorney-in-fact for Paul and Angie Sikeris (Sikeris), the owners of a condominium unit, against the defendants, Sandra, Thomas and Michael Gaetano (defendants). The Association alleges that the defendants occupied the unit for several years CT Page 1055 under written one-year leases, the last of which expired on or about May 31, 1995. On or about June 1, 1995, the Association asserts that it disapproved an application for renewal of this lease and the Gaetanos have unlawfully remained in the unit since that time. On September 1, 1995, the Sikeris' filed a motion to intervene as party defendants in this action arguing that they are indispensable parties to the action. The Association counters that it holds a power of attorney coupled with an interest which creates an irrevocable agency relationship that precludes the Sikeris' intervention in this action.
"Under our practice, except for cases where the applicant has an absolute right to intervene, the court is granted broad discretion in ruling upon a motion to admit new parties to proceedings before it . . . . Its authority on an application to intervene does not depend upon the presence or absence of an objection by an adverse party." (Citation omitted.) Ricard v. Stanadyne, Inc., 181 Conn. 321,322, 435 A.2d 352 (1980). "The practice in Connecticut is to file a motion addressed to the court where a party seeks to intervene in a present action."Hallenbeck v. St. Mark The Evangelist Corp.,29 Conn. App. 618, 622, 616 A.2d 1170 (1992).
In this case, the Association By-Laws provide, "Each unit owner hereby appoints the Association as the unit owner's attorney-in-fact, to institute actions of summary process in a court of competent jurisdiction to evict any occupant(s) in a unit the proposal for which occupancy has not been approved; and to institute any other action against said occupant(s)."[1] The Association argues that by appointing it as their "attorney-in-fact," the Sikeris' have waived their right to intervene in this action.
A "power of attorney" is "an instrument in writing authorizing another to act as one's agent. The person holding a power of attorney is known as an attorney-in-fact thus distinguishing him from an attorney at law."McLaren Gold Mines Co. v. Morton, et al., 224 P.2d 975,979, 124 Mont. 382 (1950). "By attorney in fact is meant one who is given authority by his principal to do a CT Page 1056 particular act not of a legal character." Treat v.Tolman, 113 F. 892, 893, 51 C.C.A. 522 (2d Cir. 1902). "An attorney in fact may, of course, be an attorney at law, even though every attorney in fact is not an attorney at law." National Coal Coke Co. v. McElvain,21 F. Sup. 838 (D.Texas. 1938). "A letter or power of attorney is commonly understood to be a formal document authorizing some act which shall have a binding effect upon the person making such power of attorney." People v.Smith, 112 Mich. 192, 70 N.W. 466 (1897). "The general rule, therefore, is that a letter of attorney may, at any time, be revoked by the party who makes it; and is revoked by his death . . . . Where a letter of attorney forms a part of a contract, and is a security for money, or the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, is deemed irrevocable in law." Hunt v. Rousmanier'sAdministrators, 8 Wheat. 174, 201, 1 Pet. 1 (1823). "The rules governing the interpretation of written instruments generally govern the construction of powers of attorney. First and foremost the intention of the parties as it existed at the time the powers were granted is to be ascertained. Next, and when ascertained, that intention is to be given effect. The intention is to be ascertained from the writing alone, if possible."McLaren Gold Mines Co. v. Morton, supra, 224 P.2d 979.
In construing the parties' lease agreement, this court must respect the clear words stated therein. "A lease is a contract . . . In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Citation omitted.) Perruccio v. Allen, 156 Conn. 282,285, 240 A.2d 912 (1968). "[W]here a purely technical term is found in the midst of the language of ancient leases a presumption arises that the parties used it in its strict common-law meaning . . . . It is also doubtless true that when such a term is used in a formal CT Page 1057 clause which by common usage and recognition has been accepted as having a meaning and effect consistent with the significance of the technical term, or where there is nothing to indicate or suggest that such a term is used in other than the narrow and technical meaning which it has acquired at common law, it is to be presumed to have been used with that meaning." (Citation omitted.) Judd v. MutualBank Trust Company, 114 Conn. 553, 556-57, 159 A. 487
(1932).
Applying these principles to the parties' agreement in this case, this court finds that the Sikeris' intended to create an agency relationship specifically designed for the sole purpose of allowing the Association to bring summary process actions against tenants/sublettors of unit owners.[2]
The Association argues that the Sikeris' waived their right to intervene in any action brought by the Association under its power of attorney created in the By-Laws. "Waiver is the intentional relinquishment of a known right . . . . [w]aiver need not be express, but may consist of acts or conduct from which a waiver maybe implied . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citation omitted.) Gayle v. Young, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 927973 (February 6, 1995, Tierney, J.). "In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties." Barnard v. Barnard, 214 Conn. 99,109, 570 A.2d 690 (1990). If "the parties have reduced their agreement to a writing, their intent is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intent existed in the minds of the parties but what intention is expressed in the language used." (Internal quotation marks omitted.) Id., 110.
Here, "[t]he plaintiff has not raised any additional facts that would indicate conduct by the [defendant] constituting a waiver." Federico v. Allstate InsuranceCompany, Superior Court, judicial district of Waterbury, Docket No. 113506 (July 14, 1994, Sylvester, J.). Thus, CT Page 1058 "when the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language."Rapaport Benedict, P.C. v. Stamford, 39 Conn. App. 492,___ A.2d ___ (1995). While the By-Laws outline the right of the Association to bring summary process actions, there is no language which precludes the movants from retaining independent counsel in these actions. The language of the agreement does not require that they have agreed to waive their right to intervene in the action.
Therefore, the court finds that the Sikeris' did not waive their right to intervene in this action. Moreover, despite the argument of the Association to the contrary, such intervention does not hinder the Association from bringing the action and therefore is not a violation of their agreement. The claim of the Association that the movants "seek to delay or stop . . . .[or] control the Association" is unsupported in the record.[3]
Accordingly, the court finds that the agency relationship created in the By-Laws does not preclude the movants from intervening in this action. For the aforesaid reasons the Sikeris' motion to intervene was granted.
Clarance J. Jones, Judge